Minshall, J.
1. The principal question in the case, and the one that has elicited the most discussion from counsel, is as to the constitutional validity of the law under which the additions to the tax returns of the deceased were made. It is presented in two aspects: First, as to its prospective, and second as to its retrospective, operation.
The section in question, 2781 Revised Statutes, was adopted April 14, 1886, and reads as follows:
“ If any person whose duty it is to list property or make a return thereof for taxation, either to the assessor or county auditor, shall, in any year or years make a false return or statement, or shall evade making a return or statement, the county auditor shall for each year ascertain, as near as practicable, the true amount of personal property, moneys, credits, and investments that such person ought to have returned or listed for not exceeding [the] five years next prior to the year in which the inquiries and corrections provided for in this and the next section are made; and to the amount so ascertained for each year, he shall add fifty per centum, *105 multiply the sum or sums thus increased by said penalty by the rate of taxation belonging to said year or years, and accordingly enter the same on the tax lists in his office, giving a certificate therefor to the county treasurer, who shall collect the same as other taxes.”
It is not claimed by all the counsel who have been heard in the case, that there is any constitutional objection to this statute when applied to omissions occurring in any year subsequent to its adoption. It is conceded by most that its application to such cases is without objection. The ground upon which the opposite view is maintained is, that the constitution requires all taxes on property to be according to its true value in money (sec. 2, art. 12) ; and that the addition of the 50 per centum to the true value authorized by the section in question, contravenes this provision of the constitution. This is more plausible than sound. The object of this section is not merely to afford a remedy for the recovery of what is due the state under its system of taxation, but also to secure honest returns by adding a penalty to the making of false ones. It is conceded that the state may, for this purpose, add a penalty to the tax itself. What difference then can it make, so far as any substantial right of the individual is concerned, whether he is made to feel the penalty for a false return in the basis on which he is taxed, or in the rate of the tax itself ? Let either course be adopted and the result will be one and the same — an increase in the amount of what he has to pay. It is the latter which is of moment to the tax-payer, and not the arithmetic by which it is ascertained. But it is not necessary to consider the question further upon principle, for the addition of a certain per centum to the true amount as a penalt}r for making a false return, was sustained by this court in Genin’s Ex’r v. Auditor, 18 Ohio St. 534, and is in accordance with what has been the legislative policy of this state from an early day.
But it is apparent from its reading, that this section was, on its enactment, intended to apply to any case of a false return, falling within any of the five preceding years ; and it is this application of the statute to which objection is made *106 by all the counsel who hold the law to be invalid, on the ground that it is within the inhibition of the constitution against the enactment of retroactive laws: Legislative Article, § 28. The application of the objection to this case is found in the fact that the suit is to recover, not only the tax on additions made by the auditor for the years 1886,1887 and 1888, to which the statute had a prospective operation, but, also, for the years 1884 and 1885, to which it had not, and could only affect by retroaction. But it must be observed, that for these two jmars the auditor added no penalty upon the amount he found had been omitted in each year, he simply added the amounts and extended the tax at the proper rate for each year. So that the question here is, not whether a penalty may be imposed by a law passed subsequently to the omission, but, whether the amount that should have been returned and might have been added under the provisions of an existing law, to wit, the act of 1878, may now be added for the purpose of taxation under the provisions of the section in question ?
All laws intended to affect the conduct or the acquisition of rights by the citizen, should have a prospective effect only. This is the principle incorporated in our constitution, inhibiting retroactive laws, and finds a place in every enlightened system of jurisprudence. But the principle in no way impairs the power of the legislature to pass laws of a remedial nature, and apply them to past as well as future cases. Where a right has ’accrued a remedy for its enforcement cannot be said to impair any right of the person against whom it is enforced; to assert the contrary would be to confound the wrong with the right. In Rairden v. Holden, Adm'r, 15 Ohio St. 207, suit was brought upon the bond of an administrator under a statute which gave a new remedy on the bond against the administrator and his sureties, and which could not have been pursued at the time the bond was given. It was claimed that the action could not be maintained under the provision of our constitution, inhibiting retroactive laws. But the court held that “a statute purely remedial in its operation on pre-existing rights, obligations, duties and in *107 terests, is not within the mischiefs against which that clause was intended to guard, and is not, therefore, within a just construction of its terms,” and the suit was sustained. Such has been the uniform holding in this state.
Original section 2781 Revised Statutes, was the same as an act passed May 11, 1878, the latter having been, without change in the phraseology, carried into the revision of 1880. It, like the amended section of 1886, provided a remedy for the correction of false returns, the provisions of the two statutes being in all respects identical, except that the act of 1878 limited the inquiry to a retrospect of four years, and confined the'penalty to the last or current year of the inquiry. Under the act of 1878 additions were made to the returns of one Sturges by the auditor of Richland county. He refused to pay the taxes extended thereon in accordance with the act, and suit was brought for their recovery by the treasurer. The suit was removed by Sturges to the Circuit Court of the United States for that district; and judgment having been rendered against him, the case was taken on error to the Supreme Court of the United States, where the judgment was affirmed. Sturges v. Carter, 114 U. S. 511. It was insisted that the act was invalid because retroactive. In answer to this, Woods, J., delivering the opinion, said : “ The act of 1878 merely provided a method by which taxes might be assessed and collected in spite of the annual settlements made by the auditor. It gave a new remedy to the state for enforcing a right which it had all the time possessed, namely, the right to the taxes upon property liable to taxation.” And again it “ took away no vested right of the tax-payer, it imposed upon him no new duty or obligation, and subjected him to no new disability in reference to past transactions.” The same construction of the statute was adopted by this court in Lee v. Sturges, 46 Ohio St. 153. The suit was brought in 1878 for the recovery of taxes for the years 1876 and 1877, placed upon the duplicate by the auditor after his semi-annual settlement, for 1877, with the treasurer. The judgment of the court below for the amount was affirmed on error. And in a more recent case, State ex rel. v. Raine, 47 *108 Ohio St. 447, it is said by Bradbury, J.: “ The several statutes giving to state and county auditors authority relating to the collection of the public revenue do not create obligations against the citizen or taxpayer; they simply provide the instrumentalities by which the revenue officers may enforce obligations imposed by the statutes which create the tax.”
Now, in the case before us, the right of the state to the simple taxes on the additions made by the auditor for the years 1884 and 1885, was not created by section 2781 as adopted in 1880, nor by the same section as amended in 1886. This section in its original and amended form, simply prescribed a remedy for the recovery of taxes due the state and its subdivisions under those provisions of our tax law, which make it the duty of every citizen to return his property for taxation, and to pay the taxes levied upon it equally with others. So that the repeal of the original section, in no way affected the primary right of' the state to recover the simple taxes that had accrued upon the property of the deceased for the two years prior to 1886. The recovery of these taxes was a fair subject for the application of retrospective legislation. This is not seriously disputed; but, it is claimed, that whilst provision might have been made for the recovery of the taxes on the true amount of the additions only, the provisions therefor are so plaited and interknit with the provision for a penalty as that the entire section, so far as it was, intended to be retrospective, must fail. There is no question but that the provision for a penalty, as applied to the years prior to the passage of the act of 1886, can have no effect. It imposes a liability for the making of false returns, or failing to make returns, that did not exist at the time of the omission, and is therefore within the mischief intended to be avoided by the provision in our constitution against retroactive laws.
Therefore the question made is fairly presented. But we think it must yield to a rule of construction that has been firmly established by repeated decisions of this court. By this rule a statute may be invalid in part, by reason of some *109 provision being repugnant to the constitution, and valid as to the residue, where it appears that the invalid part is an independent provision, not in its nature and connection essential to the other parts of the statute, nor so related to the general purpose of the statute as to warrant the conclusion that the legislature would have refused to adopt it with the invalid part stricken out. Bank v. Hines, 3 Ohio St. 1, 34; Treasurer Fayette County v. Bank, 47 Ohio St. 503; State ex rel. v. Dombaugh, 20 Ohio St. 167; Railroad Co. v. Commissioners, 31 Ohio St. 338; Gibbons v. Catholic Institute, 34 Ohio St. 289, 290; Bowles v. State, 37 Ohio St. 35.
Here, in the first place, the provision for the addition of the amount omitted in the return of the taxpayer, and that for the addition of a penalty, are clearly separable. It may be said that the penalty is made to depend upon the addition of what had been wrongfully omitted; but the converse is not true: It is not necessary to impose a penalty that an addition may be made of what had been omitted. Under the statute, mere verbal criticism aside, the true amount omitted by the individual may be placed on the duplicate, with the tax extended thereon, without first increasing the addition by a penalty of 50 per centum. In the second place, it cannot be claimed with any show of reason, that the legislature would not have provided for making the addition of the amount omitted, without the addition of a penalty also. To so hold would be to disregard all known motives of human conduct, and to say, that an entire body of intelligent men would be governed by mere caprice instead of the interests of their constituents ; or rather by a desire to make the delinquent property holder smart, than to subserve the interests of the public treasury. As such motives are not entertained by men in general, they should not be ascribed to the legislature.
As the act applied prospectively to the years 1886, 1887 and 1888, and as no penalty was added by the auditor for the years 1884 and 1885, the court of common pleas erred in dismissing the petition on the ground that the act of 1886 was unconstitutional.
*110 2. We will next consider the ground on which it is said the circuit court affirmed the judgment, namely, that the proceedings instituted by the auditor were against Mary Barney, and not against her estate. Conceding that the proceedings had before the auditor for the correction of the returns of property for taxation, are judicial in character, it does not follow, as we think, that they are to be governed by all the precise rules of the Code of Civil Procedure for the commencement and prosecution of civil actions. Notice is required, but no particular style for the proceeding, or form of notice, is prescribed. It is therefore sufficient if the notice fairly informs the party of the nature of the proceeding, and in what capacity he is to appear and answer. Two notices were given in this case, both of which were disregarded. Both were addressed to “ A. W. Prout and Perry Gr. Walker, executors of the estate of Mary Barney, deceased.” The first informed them that an error had been discovered in “ your tax returns,” and fixed the 16th of March, 1889, for a hearing. This being disregarded, a second notice was sent them on April 5, 1889, addressed in the same way, and, reciting the former notice and its disregard by them, proceeded as follows: “ This is therefore to notify you that unless you shall on the 9tfi day of April, 1889, at 10 o’clock, A. M., appear at this office, which said date and place is fixed that you may have an opportunity of showing that the statement or return made by Mary Barney to the assessor was correct. Otherwise from the statement and evidence furnished to me I shall proceed to assess and charge Mary Barney upon the tax duplicate of the county with the following amounts: 1883, $11,900; 1884, $16,500; 1885, $20,500; 1886, $17,000; 1887, $24,000; and 1888, $33,000, and the same will be placed upon the county treasurer’s books for collection, together with 50 per cent, penalty on amount ascertained for the years 1886, 1887 and 1888.
“Wm. J. Bonn, County Auditor.”
Taking these notices together and it fairly appears that the proceeding was against the estate of Mary Barney, deceased ; and that what they were required to answer, was *111 as to the returns made by her in her life-time, and not as to their individual returns. That they so understood it at the time, appears from their subsequent conduct; and that is enough.
8. It is also claimed, that there was no valid presentation of the claim by the treasurer to the executors for allowance. As to this it is sufficient to say, that no presentation of the claim by the treasurer was required. The claim, on notice to the executors, had been established before the auditor and by him certified to the treasurer for collection. Having had notice of the commencement of the proceeding, the law charged them with 'notice of what thereafter was done, and it became their duty to pay the taxes charged upon the additions as other taxes.
4. It is also claimed that there was no evidence before the auditor to sustain the findings made. The evidence consisted, among other things, of a certified copy of the inventory of the estate filed by the executor in the probate court, showing notes secured by mortgage and unsecured notes, many of them running back long before 1884, on which the interest appeared to have been kept paid up, and all inventoried as good. The certified copy of the inventory was competent evidence. It made a prima fade case, and in the absence of anything to the contrary warranted the making of the additions, as, by a reference to the returns made by the deeease'd during these years, it was merely a matter of arithmetic to ascertain the omissions that had been made.
5. It is also claimed, that the claim that Mary Barney had omitted taxable property had been heard and passed upon by the board of equalization of the city of Sandusky, and was therefor adjudicated. The records of this board show that some small additions were made to her returns for the years 1884, 1885 and 1887, but they do not show that any of the matters now in dispute were adjudicated and determined by it. But the power possessed by that board are very different from the jurisdiction conferred on the auditor by section 2781. The board is a part of the machinery provided for the assessment and taxation of property; and false *112 returns or statements made to it, maj’- be corrected by the auditor under sections 2781 and 2782, as well as those made to the several assessors, so that what may be done before a board of equalization cannot be plead as a bar to the auditor in proceedings under section 2781 to correct a false return made by a property owner.

The judgment of the circuit court and of the court of common pleas, are reversed, and the cause remanded to the latter court for further proceedings.